HARRIS CUSTOM BUILDERS,
INC., Plaintiff,

v.

Richard HOFFMEYER, Defendant
and Third–Party Plaintiff,

v.

Evan A. HARRIS, Third–
Party Defendant.

No. 90 C 0741.

United States District Court,
N.D. Illinois, E.D.

Sept. 8, 1993.

James P. Hanrath, Thomas Raymond Vigil, Vigil & Hanrath, Barrington, IL, Holland Clark Capper, Holland C. Capper, Ltd., Chicago, IL, for Harris Custom Builders Inc., and Evan A. Harris.

Marshall Arthur Burmeister, Francois N. Palmatier, Burmeister, York, Palmatier, Hambry & Jones, Chicago, IL, Anthony S. Zummer, Palmatier & Zummer, Chicago, IL, for Richard Hoffmeyer.

Bruce A. Brennan, Huber & Brennan, Winfield, IL, for Nicholas Deluca.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Harris Custom Builders, Inc. ("Harris Builders") initially filed this action against defendant Richard Hoffmeyer, claiming copyright infringement. Defendant Hoffmeyer then brought a counterclaim against defendant Harris Builders and a third-party complaint against third-party defendant Evan A. Harris, Harris Builders' president, alleging violations of federal antitrust and racketeering laws and asserting a claim for unfair competition.

Harris and Harris Builders (collectively "Harris") have filed a motion, under Fed. R.Civ.P. 12(b)(6), to dismiss Hoffmeyer's counterclaim and third-party complaint. Harris has also filed a motion for sanctions under Fed.R.Civ.P. 11. Additionally, the parties have advanced a number of motions relating to discovery disputes. For the reasons stated in this memorandum opinion and order, Harris' motion to dismiss and motion for sanctions are granted. The motions relating to discovery are granted in part and denied in part.

## FACTUAL BACKGROUND

Harris Builders' underlying copyright infringement claim is based on allegations that Hoffmeyer copied Harris Builders' copyrighted architectural drawings for use in the construction of a residence. This claim has been the subject of two motions for summary judgment filed by defendant Hoffmeyer, both of which this court has denied. (See Minute Orders of February 27, 1992 and October 9, 1992.)

In his counterclaim and third-party complaint, Hoffmeyer alleges that Harris committed racketeering and antitrust violations and engaged in unfair competition by seeking, in this lawsuit, to enforce a copyright which Harris allegedly knew was invalid. According to Hoffmeyer, the reason for the copyright's invalidity is the fact that Harris Builders committed fraud on the copyright office when it procured the copyright. The fraud allegedly occurred when Harris Builders, on the application for registration for a copyright, listed itself as the author of the drawings without mentioning Maxwin Heimann, who for the most part created the drawings "except for minor revisions." (See Third Party Complaint, ¶ 29.) Hoffmeyer characterizes as fraud: 1) Harris Builders' failure to name Heimann as author; and/or 2) Harris Builders' failure to identify Heimann's original drawings, of which the copyrighted drawings were a slightly altered version, as preexisting works upon which the copyrighted drawings were based.

## DISCUSSION

### I. MOTION TO STRIKE AND DISMISS

Harris argues that Hoffmeyer's counterclaim and third-party complaint should be dismissed. The court agrees. Hoffmeyer has not pleaded facts sufficient to support its claim that Harris fraudulently obtained the copyright. Further, Hoffmeyer has not adequately stated claims under federal racketeering and antitrust law, or under state

unfair competition law. The reasons underlying these conclusions are discussed below.

### A. *Fraud on the Copyright Office*

■ Hoffmeyer alleges that Harris engaged in a criminal violation of the Copyright Act under 17 U.S.C. § 506(e) for failure to comply with 17 U.S.C. § 409. 17 U.S.C. § 506(e) provides:

> Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

The claim that Harris knowingly misrepresented facts on the copyright application is the linchpin of Hoffmeyer's counterclaim and third-party complaint. According to Hoffmeyer, Harris, knowing that the copyright had been obtained through misrepresentation and was therefore invalid, used this infringement action based on the copyright to illegally harass its competitor Hoffmeyer.

This key link of Hoffmeyer's theory must, however, fail. Hoffmeyer's factual allegations do not support his assertion that Harris materially misrepresented facts on the copyright application or that Harris intended to deceive the Copyright Office. The facts averred by counter/third party plaintiff show only that Harris failed to correctly anticipate the evolution of copyright law.

Hoffmeyer alleges that Heimann was "an independent contractor" at the time he prepared the drawings. (See Third Party Complaint at ¶ 7.) According to Hoffmeyer, Harris Builders' designation of itself as author of the drawing as a "work made for hire" under 17 U.S.C. § 101 was fraudulent because, as the Supreme Court held in *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), the work made for hire provision generally applies only to works produced by employees of an entity, not to those created by independent contractors such as Heimann.

The *Reid* case was issued, however, in June 1989, more than four months after Harris Builders completed the copyright regis-

tration. Before the *Reid* case, the case law was unclear and conflicting as to whether a work produced by an independent contractor could be claimed and copyrighted by the hiring party as "a work made for hire." For example, in *Evans Newton, Inc. v. Chicago Systems Software*, 793 F.2d 889 (7th Cir. 1986), the Seventh Circuit ruled that an independent contractor could produce a "work made for hire" as to which the hiring party would be the author, if the hiring party exercised a sufficient degree of control or supervision over the independent contractor's creation of the work. *Id.* at 894.

In representing itself as the author of a "work made for hire" on the basis that the drawings had been done for it by an independent contractor, Harris Builders took a position that several courts of appeal had endorsed as, at least, potentially viable. *See Reid*, 490 U.S. at 736 n. 2, 109 S.Ct. at 2171 n. 2 (detailing holdings of various courts of appeal). The fact that the Supreme Court's interpretation of the law later undercut Harris' stance does not convert Harris' conduct, which was supported by the law as it existed at the time, into fraud.

Hoffmeyer's allegations relative to Harris' failure to identify "preexisting works" on the copyright registration also do not support a claim of fraud. Counter/third-party plaintiff Hoffmeyer faults Harris for leaving blank Space 6 of the Form VA (visual arts) copyright registration, which calls for the identification of preexisting work upon which the work sought to be copyrighted is based. The Copyright Office's instructions for filing out Space 6 of the Form VA state:

> General Instructions: Complete space 6 if this work is a "changed version," "compilation" or "derivative work" *and* if it incorporates one or more earlier works that *have already been published or registered for copyright or that have fallen into the public domain.* (Emphasis added.)

*See* Nimmer on Copyright § 21.04.

Under these instructions, Harris had no duty to report unpublished works. Hoffmeyer does not allege that the "preexisting" Heimann drawings were ever published or entered the public domain. Consequently, the alleged facts do not support the claim

that Harris misled the Copyright Office on the application. In this respect, the facts of this case differ from the situation in *qad., Inc. v. ALN Assoc., Inc.*, 770 F.Supp. 1261 (N.D.Ill.1991), which Hoffmeyer has cited. In *qad.*, the prior work which was not disclosed on the copyright application was a computer program which had been marketed by a company other than the copyright claimant and which therefore was in the public domain. *Id.* at 1263–66.

The conclusion that Hoffmeyer has not sufficiently stated a claim of fraud is further supported by Hoffmeyer's failure to allege any facts indicating that Harris intended to mislead the Copyright Office in any way. Hoffmeyer has not alleged that Heimann did not expect Harris to own the copyright on the drawings he made. Thus, there is no indication that Harris "stole" the work or committed a truly material misrepresentation of fact, as opposed to a possibly erroneous application of law, on the copyright registration.

## B. *RICO Claim*

Hoffmeyer alleges that Harris' procurement of the allegedly invalid copyright and the subsequent infringement action against Hoffmeyer violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Counter/third-party defendants argue that Hoffmeyer has not pleaded facts sufficient to support the "pattern" element of this RICO claim.

In order to succeed on a RICO claim, a plaintiff must prove that defendant conducted the affairs of an enterprise through a pattern of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 491–93, 105 S.Ct. 3275, 3282–83, 87 L.Ed.2d 346 (1985). The RICO statute defines pattern as consisting of at least two predicate acts of racketeering activity committed within a ten year period. 18 U.S.C. § 1961(5).

Courts have elaborated on what must be pleaded and proved in order to establish the existence of a RICO pattern. The alleged predicate acts must be related to one another and pose a threat of continued criminal activity. *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct.

at 3285 n. 14. The required "continuity" is both "a closed and open ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241, 109 S.Ct. 2893, 2902, 106 L.Ed.2d 195 (1989).

In *H.J. Inc.*, the Supreme Court enumerated a number of ways in which continuity could be shown. *Id.* at 242–43, 109 S.Ct. at 2902. The predicate acts themselves could involve the threat of ongoing criminal conduct. *Id.* Alternatively, continuity appears where the racketeering activity is shown to be part of a legitimate or illegitimate entity's regular way doing business. *Id.*

Additionally, the Seventh Circuit has articulated a multifactor test for evaluating continuity. *See Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986). Under *Morgan*, factors relevant to the continuity inquiry are; 1) the duration of time over which the predicate acts were committed; 2) the number and variety of the predicate acts; 3) the number of victims; 4) the presence of separate schemes; 5) the occurrence of distinct injuries. *Id.*

Applying these standards, the court must conclude that counter/third-party plaintiff Hoffmeyer has not adequately alleged facts supporting the continuity element of the pattern requirement. Hoffmeyer's allegations as to the number, nature and timing of the predicate acts are vague and do not significantly bolster his showing on the first two *Morgan* factors. Moreover, application of the other factors point to a lack of continuity. Hoffmeyer has alleged only a single scheme (the pursuit of the lawsuit based on the allegedly invalid patent); a single victim (Hoffmeyer); and a single injury (the damage done to Hoffmeyer's competitive position).

The existence of only one scheme, one victim and one injury shows that Hoffmeyer has attempted to base a RICO claim on a "one-shot" episode of alleged criminal activity. As explained in *Sutherland v. O'Malley*, 882 F.2d 1196, 1204–05 (7th Cir.1989), such a

claim will not support RICO liability. A single scheme directed at a single victim to inflict one injury simply does not threaten the type of continued criminal activity that is the focus of the RICO statute. The RICO claim must consequently be dismissed.

## C. *Antitrust Claim*

In asserting his antitrust claim, apparently under the anti-monopoly provision of Section 2 of the Sherman Act, 15 U.S.C. § 2, Hoffmeyer focuses on the alleged anti-competitive intent behind and effect of the filing of Harris' copyright infringement lawsuit. Since Hoffmeyer's claim is based upon Harris' litigation activity, it implicates the *Noerr–Pennington* doctrine of immunity for activities, including access to the courts, that are aspects of the first amendment right to petition the government for redress of grievances. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* —— U.S. ——, ——, 113 S.Ct. 1920, 1926, 123 L.Ed.2d 611 (1993) discussing *Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

 Under the *Noerr–Pennington* doctrine, those that resort to the courts are generally immune from antitrust liability for any anti-competititve effects their litigation efforts might have. An exception to this principle exists if the antitrust defendant has engaged in "sham" litigation—litigation that is ostensibly directed at the legitimate goal of vindicating legal rights, but is actually a mere "sham" to cover an attempt to interfere directly with the business relationships of a competitor. *See Professional Real Estate Investors,* —— U.S. at ——, 113 S.Ct. at 1926.

The Supreme Court has recently addressed the issue of what an antitrust plaintiff must show in order to demonstrate that a defendant has engaged in "sham" litigation and is therefore not entitled to *Noerr–Pennington* immunity. In *Professional Real Estate Investors,* —— U.S. at ——, 113 S.Ct. at 1928, the Court stated that, in order to qualify as a sham, a lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Secondly, the baseless lawsuit must conceal an attempt to interfere directly with the business relationships of a competitor, through the use of governmental process-as opposed to the outcome of that process-as an anti-competitive weapon. *Id.*

Before the Supreme Court's decision in *Professional Real Estate Investors,* the courts of appeals had differed on the question of whether litigation which was objectively reasonable but was motivated by anti-competitive considerations could constitute a sham. *Professional Real Estate Investors,* which like this case involved the evaluation of a copyright infringement suit as a "sham," answered the question in the negative. *Professional Real Estate Investors,* —— U.S. at ——, 113 S.Ct. at 1926. Consequently, Hoffmeyer, in order to prevail on his antitrust claim, must establish that Harris Builders' copyright infringement suit is a sham in the sense that no reasonable litigant could expect success on the merits. *Id.,* —— U.S. at ——, 113 S.Ct. at 1928.

 When evaluating a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court focuses on the complaint, but may also take into account matters of public record, orders and items appearing in the record of the case. *See* Wright and Miller, *Federal Practice and Procedure: Civil 2d* § 1357 (citing cases). Pursuant to this principle, the court, in determining whether Hoffmeyer is entitled to proceed on its claim that Harris Builders' infringement suit is a sham, may consider the evidence submitted on the two prior summary judgment motions that have been decided in this case.

 This inquiry leads to the conclusion that, according to the objective standard endorsed in *Professional Real Estate Investors,* the infringement suit is not a sham. As the court stated in its February 27, 1992 order, plaintiff Harris Builders has presented sufficient evidence to raise a genuine issue of material fact as to whether defendant Hoffmeyer copied its copyrighted architectural plans. An action that is well enough grounded, factually and legally, to survive a motion for summary judgment is sufficiently merito-

rious to lead a reasonable litigant to conclude that they had some chance of success on the merits. Consequently, plaintiffs' infringement action is not a sham and, under *Noerr–Pennington*, cannot subject Harris to antitrust liability.

■ Additionally, even if *Noerr–Pennington* immunity were not available, Hoffmeyer's antitrust claim would have to be dismissed because he has not satisfactorily alleged a claim of attempted monopolization. To establish an attempt to monopolize under Section 2 of the Sherman Act, a plaintiff must show 1) specific intent to achieve monopoly power; 2) predatory or anticompetitive conduct directed at achieving this unlawful end; and 3) a dangerous probability that the attempt to monopolize will be successful. *See Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413 (7th Cir. 1989).

A successful attempt to monopolize would result in the acquisition of monopoly power in a given market. Monopoly power has been defined as "power over price" in the sense that a monopolist possesses the ability to "cut back the market's total output and so raise price." *Id.* at 1414. In certain cases, market share is an indicator of this market power. *Id.* The ultimate inquiry in an attempted monopolization case is whether the defendant has or reasonably might come close to having the ability to control market output and prices. *Id.*

■ Viewed in the light of these principles, Hoffmeyer's attempted monopolization claim is markedly lacking. Hoffmeyer has alleged no facts indicating that Harris Builders possesses or could potentially possess monopoly power in any relevant market. The counterclaim and third-party complaint contain no allegations as to Harris' ability to control prices or its market share. No real attempt is made to identify or describe the relevant market. Since counter/third-party plaintiff's pleading contains no facts that would support a claim that Harris Builders has monopolized or might potentially monopolize the relevant market, the claim must be dismissed.

### D. Unfair Competition

Hoffmeyer has asserted a claim of "unfair competition" which is based on the same allegations as his other claims, *i.e.*, that Harris has wrongfully pursued an infringement action to enforce an invalid copyright. It is unclear under what law Hoffmeyer brings this claim. The only case which his brief cites in support of the claim, *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965) is a federal antitrust case. As previously discussed, Hoffmeyer has failed to state a claim for antitrust violations. Hoffmeyer has not suggested, nor can the court identify, any other federal statute that would give rise to a cause of action on these facts.

Hoffmeyer's unfair competition claim fares little better under Illinois law. Hoffmeyer has not cited an Illinois case in which an unfair competition claim was successfully asserted on the basis that the defendant had improperly used litigation as a means of competition. In fact, courts applying Illinois law have concluded that the only causes of action that can arise from the wrongful filing of a lawsuit (a category that encompasses Hoffmeyer's claim) are malicious prosecution and abuse of process. *See Havoco of America, Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir.1983), citing *Lyddon v. Shaw*, 56 Ill. App.3d 815, 14 Ill.Dec. 489, 372 N.E.2d 685 (2d Dist.1978).

■ Hoffmeyer's allegations, however, cannot sustain claims of either malicious prosecution or abuse of process. The elements of malicious prosecution are 1) that the defendant brought judicial proceedings against the plaintiff; 2) that there was a lack of probable cause for those proceedings; 3) that the defendant demonstrated malice in instituting the proceedings; 4) that the cause of action was terminated in the plaintiff's favor; 5) that the plaintiff was injured. *See e.g., Korbelik v. Staschke*, 232 Ill.App.3d 114, 173 Ill.Dec. 181, 183, 596 N.E.2d 805, 807 (1st Dist.1992). In this case, counter/third-party plaintiff cannot allege an action for malicious prosecution because the underlying lawsuit has not yet terminated in his favor. Moreover, as discussed in the context of *Noerr–*

*Pennington* immunity, Harris has already presented significant evidence in support of his claim. This evidence adequately demonstrates that plaintiff had probable cause to file its lawsuit.

■■■■ To state a claim for abuse of process, a plaintiff must allege an ulterior purpose and an act in the use of legal process not proper in the regular prosecution of the proceedings. *See Erlich v. Lopin–Erlich,* 195 Ill.App.3d 537, 142 Ill.Dec. 671, 672, 553 N.E.2d 21, 22 (1st Dist.1990). Although Hoffmeyer has asserted the existence of an ulterior motivation for Harris' copyright infringement action, he has not alleged any act in the use of the legal process that was not proper in the regular prosecution of the proceedings. Since Hoffmeyer has not alleged a claim for either abuse of process or malicious prosecution, any state law claim based on the Harris' maintenance of the copyright infringement lawsuit must fail.

### E. *Rule 11*

■■■ Contending that Hoffmeyer's counter and third-party claims were not warranted by existing law and were interposed for an improper purpose, Harris has requested sanctions under Fed.R.Civ.P. 11. An unsuccessful claim is not necessarily sanctionable under Rule 11 and, in this case, some factors militate against the imposition of sanctions. Hoffmeyer's claims touched on somewhat unsettled areas of law. The *Professional Real Estate Investors* case relied upon by this court was decided by the Supreme Court after the motions before the court were fully briefed, and the pattern requirement of the RICO statute has historically presented interpretative difficulties for both courts and parties. *See generally H.J. Inc.,* 492 U.S. at 236, 109 S.Ct. at 2898–99. Further, the Harris Builders copyright registration which is the focus of the claim, while not fraudulent, is not a model of legal propriety; Hoffmeyer was justified in devoting attention to it and questioning its validity.

Nevertheless, having reviewed Hoffmeyer's submissions, the court must conclude that Rule 11 sanctions are appropriate. In bringing RICO and Sherman Act claims, both of which involve a possible award of treble damages, Hoffmeyer asserted very serious allegations. The papers filed by Hoffmeyer do not, however, evidence the type of reasonable legal inquiry that should provide the foundation for claims of this gravity.

In his response brief to Harris' motion, Hoffmeyer made no effort to define his antitrust claim in relation to the established legal standards for monopolization or attempted monopolization. Likewise, in defending his RICO claim, Hoffmeyer did not attempt to establish the existence of a pattern by reference to *H.J. Inc., Sedima, Morgan* or any other authority. The unfair competition claim was similarly vaguely defined and ill-supported. Further, the context in which the claims were brought points to an intention to harass and delay Harris in the prosecution of its copyright infringement suit. In light of these circumstances, the court must conclude that, in violation of Rule 11, Hoffmeyer's claims were not advanced after a reasonable inquiry into whether they were warranted by existing law and were interposed for an improper purpose. As a sanction, Attorney Zummer, who signed the counterclaim and the third-party complaint, is directed to pay $500 to Harris Builders and $500 to Evan Harris. This sanction is commensurate with the magnitude of the violation and is imposed for the purpose of deterrence. *See Brown v. Federation of State Medical Boards of the U.S.,* 830 F.2d 1429, 1439 (7th Cir.1987) (Rule 11 award of amount less than full attorney fees can be appropriately imposed for deterrence purposes).

## II. *DISCOVERY DISPUTES*

The parties have brought a number of discovery disputes to the attention of the court. Harris' Motion for an Order Compelling Discovery and Award of Appropriate Sanction relates to evidentiary materials requested in connection with Hoffmeyer's counterclaim and third-party complaint. Since these claims have been dismissed, Harris' motion is moot. Likewise, to the extent that Hoffmeyer's Combined Motion Under Rule 37 To Compel Harris to Comply With Discovery Requests is directed at information

allegedly relevant to the counter and third-party claims, it is also moot.

Hoffmeyer's "Combined Motion Under Rule 37" also requests production of the tax returns of Evan Harris and businesses with which he is affiliated. The court determines that the purposes advanced by Hoffmeyer for disclosure of the tax returns should be satisfied by production of returns from 1988 to 1992. Harris is directed to disclose tax returns from that period for himself and his associated businesses. Since Harris' opposition to this motion was partially successful and was substantially justified, the parties are to bear their own expenses. Fed.R.Civ.P 37(a)(4). The parties are also to bear their own expenses as to the mooted motions, because neither side prevailed on the merits.

Additionally, plaintiff Harris has filed a Motion to Enter a Default Judgment or Appropriate Sanction Based on the Destruction of Evidence. The "destroyed evidence" consists of documents relating to the design and construction of the house which is the subject of the allegedly infringing drawings. These documents were in the control of Hoffmeyer, who subsequently lost or destroyed them. Some, but apparently not all, of the allegedly "lost or destroyed" documents were subsequently found and provided to plaintiff.

A default judgment can be an appropriate sanction for the loss or destruction of relevant evidence. *See Marrocco v. General Motors Corp.*, 966 F.2d 220, 225 (7th Cir. 1992). Because default is a "drastic" sanction, the Seventh Circuit has recommended that courts consider lesser sanctions before imposing default judgments as punishment for improper behavior during discovery. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 75 (7th Cir.1992).

The circumstances presented in this case may not warrant the extreme sanction of default. The court, however, leaves open the possibility of such a sanction or a lesser sanction. The issue of an appropriate sanction is held in abeyance until the question of Hoffmeyer's destruction or loss of the documents which have not been provided during discovery, and the prejudice caused thereby, can be evaluated in the context of the preparation and presentation of evidence at trial, if this case is not settled.

### CONCLUSION

For the reasons stated in this memorandum opinion and order, Evan Harris and Harris Builders' motion to dismiss the counterclaim and third-party complaint is GRANTED. Their motion for an order compelling discovery is DENIED as moot and their motion for a default judgment is DENIED. Hoffmeyer's Combined Motion Under Rule 37 is DENIED in part as moot and is GRANTED in part.

The parties are again strongly urged to discuss the settlement of this case. The case is set for status on September 21, 1993 at 10:00 a.m.