**LZT/FILLIUNG PARTNERSHIP, LLP,**
Plaintiff–Counterdefendant,

v.

**CODY/BRAUN & ASSOCIATES, INC.,**
Defendant–Counterplaintiff.

No. 98 C 2823.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 12, 2000.

Marianne C. Holzhall, Jamie A. Robinson, Foley & Lardner, Chicago, IL, for Plaintiff–Counterdefendant.

Werner Sabo, Shawn E. Goodman, Sabo & Zahn, Chicago, IL, for Defendant–Counterplaintiff.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

The Court conducted a three-day bench trial on September 12, 13, and 14, 2000, to consider LZT/Filliung Partnership, LLP's complaint that Cody/Braun & Associates, Inc., infringed its copyright in construction drawings and Cody/Braun's counterclaim that LZT's copyright is invalid. The Court has carefully considered the testimony of the three witnesses who appeared at trial, the numerous exhibits introduced into evidence, the written submissions and the closing arguments of counsel. The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent certain findings may be deemed conclusions of law, they shall also be considered conclusions. Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they shall also be considered findings. *Miller v. Fenton,* 474 U.S. 104, 113–14, 106 S.Ct. 445, 451–52, 88 L.Ed.2d 405 (1985).

## I. *FINDINGS OF FACT*

### A. THE PARTIES

1. Plaintiff–Counterdefendant LZT/Filliung Partnership, LLP ("Plaintiff" or "LZT") is an Illinois limited liability partnership engaged in the practice of architecture. The partners in LZT are LZT Associates, Inc., a Delaware corporation, James J. Filliung ("Filliung"), Michael Mistele and Terrence Russell. Filliung, LZT's managing partner, testified at trial. Filliung did not prepare any of the construction drawings. He oversaw the general production of the project.

2. Defendant–Counterplaintiff Cody/Braun & Associates, Inc., ("Defendant" or "Cody/Braun") is an Illinois corporation engaged in the practice of architecture. Jeffrey Braun ("Braun"), an officer of

Cody/Braun and architect for over 25 years, testified at trial.

3. Alden North Shore Associates, LP and its in-house architectural firm, Alden Design Group, Inc. (collectively "Alden") are in the business of building and designing nursing homes and assisted living facilities. Alden is not a party to the litigation, but is at the center of the dispute which gives rise to the litigation. Raymond A. Schultz ("Schultz"), an architect and President of Alden Design Group, Inc., testified at trial.

## B. ALDEN–LZT CONTRACT AND ARBITRATION

4. In September, 1996, LZT was retained by Alden to provide architectural services for the development of a two-story assisted living facility in Skokie, Illinois (the "North Shore project"). (PX 4). Prior to bidding on this job, LZT was provided with design drawings from Schultz. (DX 105). These drawings set forth the overall concept and the general shape and arrangement of spaces. Cody/Braun was an unsuccessful bidder on the North Shore project. Schultz characterized LZT as a drafting service to prepare construction drawings of the architectural, mechanical, electrical and plumbing plans. (PX 4, ¶ 2.1.1, 2.3). Alden separately contracted for the civil, structural, landscaping and kitchen plans. (PX 4, ¶ 12.1). LZT was to prepare construction drawings and coordinate the on-site parking, landscaping and civil engineering plans which were being designed by others. (PX 4, p. 1).

5. The Alden/LZT contract required LZT to follow Schultz's concept drawings. (PX 4, p. 1). LZT had no responsibility for the design phase of the project. (PX 4, ¶ 2.2).

6. The Alden/LZT contract specifically dealt with the issue of copyright and use of the plans to be prepared by LZT as follows:

The Drawings, Specifications and other documents prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this Project, *and the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright.* The Owner shall be permitted to retain copies, including reproducible copies, of the Architect's Drawings, Specifications and other documents for information and reference in connection with the Owner's use and occupancy of the Project. The Architect's Drawings, Specifications or other documents shall not be used by the Owner, or others on other projects, for additions to this Project or for completion of this Project by others, unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

(PX 4, ¶ 6.1) (emphasis added).

7. In the course of LZT's work, Schultz provided LZT with a complete set of plans previously used at Alden's Orland Park project to be used as a guideline for the North Shore project. (DX 14). The Orland Park plans contained details and standards which Alden expected LZT to include in the North Shore project in order to expedite approval of the project with governmental bodies. (PX 104). Because Filliung had not personally worked on the construction plans, there was no reliable testimony to explain how LZT prepared the plans and what sources it relied upon.

8. David Selinger ("Selinger") was LZT's project manager for the North Shore project. He and Schultz would communicate and meet regularly to discuss the progress of the plans. Schultz was actively involved in the preparation of the plans and he would periodically send memos, drawings and details to LZT regarding the plans. (See e.g., DX 56, 80, 83, and 90). Schultz provided a number of finish details and specifications used in the project. (DX 5).

9. A dispute arose between Alden and LZT regarding the plans. LZT believed that it was not being paid in accordance with the contract and that its plans were complete. LZT claimed that Alden was more than $70,000 in arrears. Alden believed that the plans were not complete and that LZT had been overpaid, based on the plan's stage of completion.

10. In an effort to resolve this dispute, an LZT architect brought a set of plans to review with Schultz. Schultz examined these plans and determined they were incomplete. (DX 106). These plans were not left with Schultz and were taken back the same day, April 7, 1997, to LZT's offices.

11. The dispute between LZT and Alden escalated. In mid-April, 1997, LZT ceased all work on the project because it had not been paid. Alden terminated LZT several weeks later.

12. Pursuant to the Alden/LZT contract, Alden commenced arbitration proceedings to recover its architectural fees. On July 19, 1999, the arbitrator awarded LZT $52,070, finding that it was entitled to unpaid fees based on 85% completion of the construction documents. The arbitrator awarded Alden $5,250 for structural engineering fees, which it had advanced, resulting in a net award in LZT's favor in the amount of $46,820. (PX 14).

## C. ALDEN–CODY/BRAUN CONTRACT

13. Following termination of LZT, Alden contacted Cody/Braun to discuss whether it would draft construction documents for the North Shore project.

14. Alden and Cody/Braun entered into a contract dated May 14, 1997 and amended May 23, 1997. (PX 5). Cody/Braun's role was to produce a complete set of construction documents starting from Schultz's design drawings. Upon the advice of counsel, and because of the ongoing dispute between Alden and LZT, Cody/Braun requested that the agreement be amended to include a hold harmless agreement as follows:

> The ALDEN DESIGN GROUP, INC. agrees to defend, indemnify and hold harmless CODY/BRAUN & ASSOCIATES, INC. its officers, directors and employees, and any and all consultants of CODY/BRAUN & ASSOCIATES, INC. from all claims, damages, losses and suits, including attorneys fees and expenses, arising out of or in any way connected with alleged patent, trademark or copyright infringement related to any work of LZT/FILLING PARTNERSHIP provided to CODY/BRAUN & ASSOCIATES, INC. and/ or any of its consultants.

(PX 5).

15. The contract price was $128,500 and Cody/Braun received $124,690 for its work. Cody/Braun lost $7,821 in preparing the construction documents. (DX 121).

16. Schultz provided Cody/Braun with his design drawings (DX 105), Welsch's structural drawings (PX 3, S1–S10), a set of LZT drawings (date unknown), a set of Alden Orland Park plans (DX 104), and a set of civil engineering drawings.

17. Cody/Braun did not copy LZT's plans. The Court finds Braun to be a credible witness who conducted himself professionally in preparing the architectural plans.

18. Cody/Braun prepared its own set of architectural plans. (PX 3). Cody/Braun developed its own set of drawings. The Cody/Braun drawings and the LZT drawings contain a number of similarities because they are both derived from Schultz's design drawings and relied upon the Welsch structural drawings. For example, the layout of the rooms generally follow Schultz's design.

19. A comparison of the LZT plans and the Cody/Braun plans reveals that the plans were each independently prepared. (See e.g., PX 32–38).

20. Cody/Braun's drawings are not so similar to LZT's that an ordinary reasonable person would conclude that Cody/Braun copied LZT's copyrighted drawings.

21. LZT relies heavily on the fact that the word "psychosocial" is misspelled on both sets of plans on the second floor drawings (PX 34), and spelled correctly on both sets of plans on the first floor drawings. LZT would have the Court find this to be circumstantial evidence of copying. However, there was also evidence presented that the word was similarly misspelled on the drawings that Schultz gave both parties. (DX 105). The Court therefore focuses its attention on the many differences found on the two sets of drawings, which lead it to find that Cody/Braun's drawings were independently created.

22. The Court notes the following examples taken from PX 33, not to be construed as an exhaustive list, of the differences it finds between the parties' plans: (1) LZT labeled its first floor plan as being "14,230 sq. ft.", Cody/Braun labeled its first floor plan as "total sq. ft. 14,236." (2) LZT labels one of the rooms on its drawing as "Manifold storage room", Cody/Braun labeled its corresponding room, "MED GAS STORAGE." (3) Each drawing has an area marked "vestibule," on LZT's drawing the door to the "vestibule" is drawn to open in one direction, on Cody/Braun's it opens on the other. LZT has the "vestibule" measuring at 21′–3″, Cody/Braun has no measurement across. (4) Similarly, in the room marked "admission" on both drawings, LZT has a door on the east side of the room, and Cody/Braun has the door drawn on the west side with a closet; LZT's drawing does not show a closet. (5) On LZT's drawing the "pantry" is directly to the west of elevators # 1 and # 2 and elevator # 1 is directly above # 2; on Cody/Braun's drawing, the "pantry" is drawn to the south of the two elevators, instead of to the west. (6) On LZT's plan, just north of what is marked "living room" there is an "office" and "director nurses". On Cody/Braun's drawing in the same area, Cody/Braun has drawn a "card room" to the east of the dining room, which is not shown on LZT's and it also shows a "library" which measures 11′–0″ in the location where LZT's "director nurses" room is drawn, just north of the "living room". On LZT's plan, "director nurses" is 12′–0″. Cody/Braun's plan does not have an "office" in that area. (7) LZT's plan labels the southern bedrooms as "2 bed suites" measuring 12′–8½″, Cody Braun's "2 bed suites" are labeled as measuring 12′–8¼″. (8) On LZT's plan it shows a "2 bedroom deluxe" measuring 12′–8 ½″, on Cody/Braun's plan, the same space is labeled "3 bed suite" and is measured at 12′–8½″. Similar differences like these exist throughout each of the comparative charts presented by LZT. (See e.g., PX 32, 34–38). It is clear to the Court that Cody/Braun did not copy LZT's drawings, rather it independently created its own construction drawings.

## D. THE COPYRIGHT DISPUTE

23. On May 20, 1997, LZT applied to register its copyright in the drawings and specifications and submitted to the Copyright Office drawings dated April 7, 1997 (PX 2), and a book of technical specifications. Filliung completed the registration application. (PX 1). It was the first time he had ever registered a set of plans. He registered the plans to assist his efforts to obtain payment under the contract, to protect LZT's plans and to prevent Alden and Cody/Braun from copying LZT's plans.

24. The copyright registration for LZT's drawings and specifications, Certificate No. VA–402360, issued effective May 21, 1997. (PX 1).

25. LZT does not claim a copyright in all elements of the drawings submitted to the copyright office. LZT claims a copyright in the following: architectural drawings (sheets A–1 through A–28); the plumbing drawings (sheets P–0 through P–7); the mechanical drawings (sheets M–1 through M–7); the electrical drawings

(sheets E–1 through E–13) and sheets MP–1 and T–2.

26. After Cody/Braun completed the construction drawings, it placed the plans on display at Construction Market Data, Inc., a firm that acts as an information clearinghouse for contractors seeking to bid on projects.

27. Filliung went to Construction Market Data, Inc. to inspect the Cody/Braun plans. He looked at the Cody/Braun plans for approximately 45 minutes. Although he did not study the details, he concluded in his own mind that Cody/Braun had copied the LZT plans. This litigation ensued.

## II. *CONCLUSIONS OF LAW*

### A. JURISDICTION

28. This action arises under the Copyright Act, 17 U.S.C. § 101 et seq. Thus, this Court has jurisdiction under 28 U.S.C. § 1338.

### B. BURDEN OF PROOF

29. To establish infringement, the Plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Telephone Service Company, Inc.* 499 U.S. 340, 360, 111 S.Ct. 1282, 1295, 113 L.Ed.2d 358 (1991); *Harris Custom Builders, Inc. v. Hoffmeyer* 92 F.3d 517, 519 (7th Cir.1996). LZT has a valid copyright, however, Cody/Braun established that its construction drawings were independently created and were not copied from LZT's construction drawings.

30. A plaintiff cannot succeed in his proof if (1) the similarities between the works are not sufficient to prove copying, or (2) it is established that one work was arrived at independently without copying. *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 508 (7th Cir.1994).

### C. VALID COPYRIGHT

31. An owner of a copyright is protected against unauthorized copying. *Mazer v. Stein,* 347 U.S. 201, 218, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954). The first major issue the Court will address is whether LZT has a valid copyright. Cody/Braun contends that LZT's copyright certificate is invalid for four main reasons: (a) that LZT failed to inform the Register of Copyrights that its drawings were actually derivative of copyrighted drawings of Alden; (b) other portions of the drawings were in the public domain; (c) other parts of the drawings were actually works created by persons hired by Alden for which works Plaintiff had no right to request a copyright registration; and (d) that the copyright was not valid because LZT failed to set forth that the party that hired LZT/Filliung was Alden.

32. The Plaintiff's certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the validity of Plaintiff's copyright. 17 U.S.C. § 410(c); *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 507 (7th Cir.1994).

33. The presumption may be rebutted by evidence that disputes or rebuts the validity of the copyright. *Mid America Title Co. v. Kirk,* 59 F.3d 719, 721 (7th Cir.1995); *Pickett v. Prince,* 52 F.Supp.2d 893, 900 (N.D.Ill.1999). However, the burden of proof in the sense of the risk of nonpersuasion remains throughout the trial upon the party on whom it was originally cast. *Id.*

34. The Court holds that LZT has a valid copyright and rejects Cody/Braun's arguments raised in its third affirmative defense and counterclaim.

35. "Only the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action..." *Balsamo/Olson Group Inc. v. Bradley*

*Place Limited Partnership,* 966 F.Supp. 757, 761 (C.D.Ill.1996) (quoting *Eckes v. Card Prices Update,* 736 F.2d 859, 861–62 (2d Cir.1984)). LZT's copyright registration, Certificate No. VA–402360, issued effective May 21, 1997 (PX 1), served as *prima facie* evidence of a valid copyright. The burden then shifted to Cody/Braun to overcome this presumption. According to the instructions from the Copyright Office, LZT needed only to check the box identifying a preexisting work if the work for which registration was being sought "incorporates one or more earlier works that have already been published or registered for copyright or that have fallen into the public domain." *Harris Custom Builders, Inc. v. Hoffmeyer,* 834 F.Supp. 256, 259 (N.D.Ill.1993). Alden did not register its copyright until September of 1997. (DX 92–93). Therefore, at the time of LZT's copyright registration in May of that same year, the concept drawings were not published, copyrighted, or having fallen into the public domain. The facts here simply do not show that LZT set out to defraud the Copyright Office by not disclosing Alden. *Id.* at 259–60.

■ 36. Cody/Braun's claim that LZT failed to disclose that "other portions" of its drawings were in the public domain similarly does not void its copyright. It is entirely permissible for one to create an original work out of parts in the public domain. *Reed–Union Corp. v. Turtle Wax, Inc.,* 77 F.3d 909, 913 (7th Cir.1996).

■ 37. The last two of Cody/Braun's arguments are based on the works made for hire doctrine. A work made for hire is (1) a work prepared by an employee within the scope of his employment; or (2) a type of work that fits in one of the nine specified categories of specially ordered work or commissioned work, if the parties expressly agree in writing that the work is to be a work made for hire. 17 U.S.C. § 101. In this case, Filliung testified that the work done by LZT was done by his employees, thus it qualifies as a work for hire and he was correct in designating the work

as such. LZT's work could not be considered a commissioned work because only the specific types of work listed in that section constitute works prepared "on special order or commission." *Joseph J. Legat Architects, P.C. v. United States Development Corp.,* 625 F.Supp. 293, 297 (N.D.Ill.1985)(quoting 1 Nimmer, § 15.03[B][2][a] at 5–18 to 5–19(1985)). Architectural work is not one of the specified categories. *Id.* at 297. For these reasons, LZT's registration is not invalid because it did not identify Alden on its application.

38. Filliung completed the copyright registration application. This was the first time he had ever registered a set of plans. Any mistakes he may have made were innocent and clearly not a knowing failure to advise the Copyright Office of facts which would have led to the rejection of his application.

■ 39. It is well established that immaterial, inadvertent errors in an application for copyright registration will be excused and do not destroy the validity of the registration. *Data General Corporation v. Grumman Systems Support Corporation,* 36 F.3d 1147, 1161 (1st Cir.1994); *Raquel v. Education Management Corporation,* 196 F.3d 171, 176 (3d Cir.1999). Furthermore, the leading treatises on copyright also support this view. Nimmer writes, "The courts generally have been most lenient…with respect to any innocent error contained in an application for a registration certificate…[A] misstatement or clerical error in the registration application if *unaccompanied by fraud* will not invalidate the copyright nor render the registration certificate incapable of supporting an infringement action." 2 M. Nimmer & D. Nimmer, Copyright § 7.20[B] at 7–208, § 7.18[C][1] at 7–201 (2000)(emphasis added).

40. Generally, an error is immaterial if its discovery is not likely to have resulted in the Copyright Office's refusal of the application. *Raquel,* 196 F.3d at 176.

There was no evidence that any misstatement by LZT was material or had LZT disclosed more information, the Copyright Office would have rejected its application. For example, the fact that LZT may have sent a large bundle of plans to the Copyright Office not intending to claim a copyright in all the documents and also the failure of LZT to disclose its incorporation of preexisting works are immaterial, inadvertent errors. The evidence shows that LZT did not intend to deceive the Copyright Office and LZT only claims a copyright in the plans it prepared.

### D. COPYING

■ 41. Proof of copying is crucial to any claim of copyright infringement because no matter how similar the two works may be (even to the point of identity), if the defendant did not copy the work there is no infringement. *Selle v. Gibb,* 741 F.2d 896, 900 (7th Cir.1984).

42. Because direct evidence of copying is not often available, the plaintiff can rely on circumstantial evidence to prove copying through a showing of access by the defendant to the plaintiff's copyrighted work and substantial similarity between the works. *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1170 (7th Cir.1997); *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 507 (7th Cir.1994); 4 Nimmer, § 13.01[B], at 13–10 to 13–12 (2000).

43. In determining whether copying has occurred, the court can consider: "(1) testimony pertaining to the possibility of defendant's independent creation, including dissimilarities between the works; (2) the existence of common features that are in the public domain; and (3) the prevalence of similar third-party works." *Fasa Corporation v. Playmates Toys, Inc.,* 912 F.Supp. 1124,1168 (N.D.Ill.1996) rev'd on other grounds 108 F.3d 140 (7th Cir.1997).

#### 1. Access

44. Access can be found to exist when the defendant had an opportunity to view the protected item. Nimmer, § 13.02[A] at 13–16 (2000).

45. Access may be inferred when two works are so similar to each other that it is likely the second work was copied from the first. However, the inference can be rebutted by disproving access or a showing of independent creation. *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1170 (7th Cir.1997). Schultz provided Cody/Braun with a set of LZT drawings. They were clearly not the final set. It is unclear from the record which set of drawings Cody/Braun received or in what ways they differed from the LZT copyrighted set. However, the record does show that Cody/Braun never had access to the copyrighted set. Although the Court finds some access, this case turns on the issues of substantial similarity and independent creation.

#### 2. Substantial Similarity

46. The test in the Seventh Circuit for determining whether there is "substantial similarity" is that of an ordinary observer: "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Wildlife Express Corp.* 18 F.3d at 509 (7th Cir. 1994); *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 614 (7th Cir.1982). In this case, the Court holds that an ordinary reasonable person would not conclude that Cody/Braun's plans are so similar to LZT's plans that Cody/Braun unlawfully appropriated LZT's protectable expression by taking material of substance and value.

#### 3. Independent Creation

47. If the alleged infringer created the accused work independently or both works were copied from a common source in the public domain, then there is no infringe-

ment. *Selle,* 741 F.2d at 901 (7th Cir. 1984).

48. When the plaintiff makes a showing of access and substantial similarity, a presumption of copying is raised. The Court finds that Cody/Braun did not copy LZT's drawings; it independently created its drawings and the similarities derived from a common source. Proof of independent creation was derived from the evidence presented by Cody/Braun. First, Schultz provided Cody/Braun with his design drawings (DX 105), Welsch's structural drawings, a set of Alden Orland Park plans (DX 104), and a set of civil engineering drawings. LZT was provided with these same drawings which contained standards Alden expected LZT to use. Second, Welsch's structural drawings preset the foundation locations, the columns, window openings, elevator shafts, and stairwells for both architects. Third, Schultz was greatly involved with both sets of architects to see to it that features used in prior Alden projects were incorporated in the North Shore project. Fourth, Braun's explanation of how the plans were prepared was credible and was supported by time records. Finally, Cody/Braun lost money on this project because of the extensive hours and manpower that went into creating construction drawings for Alden. If Cody/Braun was copying LZT's drawings, surely it would have made a profit.

**E. Attorney's Fees**

49. The Copyright Act provides that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. In this case, Cody/Braun prevailed on LZT's complaint and LZT prevailed on Cody/Braun's counterclaim.

50. Prevailing plaintiffs and prevailing defendants should be treated alike under § 505, but attorney's fees are to be awarded to prevailing parties only as a matter of the Court's discretion. *Fogerty v. Fantasy, Inc.* 510 U.S. 517, 534, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994);

*Budget Cinema, Inc. v. Watertower Assoc.,* 81 F.3d 729, 730 (7th Cir.1996).

51. The Supreme Court in *Fogerty* stated that there was no exact test to be applied, but rather, courts should exercise equitable discretion. *Fogerty,* 510 U.S. at 534, 114 S.Ct. at 1033.

52. There are several nonexclusive factors to guide the courts in determining whether to award attorney's fees to the prevailing party: frivolousness, motivation, objective unreasonableness (both factual and legal components), and the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* at n. 19.

53. There was bad blood between Alden and LZT. Cody/Braun was caught in the middle. But, the bad blood between the parties was not enough to show frivolousness in LZT bringing the suit. Filliung spent time looking at Cody/Braun's drawings, he genuinely thought they were copied from his plans. LZT brought this suit based on that belief. Filliung was motivated by a desire to protect LZT's plans and to prevent Alden and Cody/Braun from obtaining an unfair advantage by using LZT's plans. Filliung was wrong in his assessment. In the exercise of discretion, the Court concludes that attorney's fees should not be awarded against LZT.

54. The best defense is a good offense. In this case, Cody/Braun defended itself in part by raising affirmative defenses and a counterclaim challenging LZT's copyright. LZT's copyright application leaves something to be desired, but it does not rise to the level of voiding the copyright certificate. The counterclaim was not frivolous and was motivated by sound litigation strategy which ultimately was not successful. In the exercise of discretion, the Court concludes that attorney's fees should not be awarded against Cody/Braun.

### III.  *CONCLUSION*

Close only counts in horseshoes, not copyright law. The Cody/Braun drawings may be "close" to LZT's but are not a copy because they were each created independently. The Court concludes that LZT has a valid copyright in its drawings, but Cody/Braun did not infringe that copyright. Cody/Braun created its own construction drawings of the North Shore project for Alden. Cody/Braun's drawings may be similar when viewed from afar, but when examined up close, the differences are clearly evident and abundant.

**The Court directs the Clerk to enter judgment in favor of Defendant–Counterplaintiff Cody/Braun & Associates, Inc., and against Plaintiff–Counterdefendant LZT/Filliung Partnership, LLP, on Plaintiff's Complaint and in favor of Plaintiff–Counterdefendant LZT/Filliung Partnership, LLP, on Defendant–Counterplaintiff Cody/Braun & Associates, Inc.'s Counterclaim. Each party shall bear its own attorney's fees and costs.**